UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| BITA TRADING, INC., | CASE NO. 13cv1548 JM(WVG) |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| NATIONWIDE MUTUAL INSURANCE COMPANY; ALLIED INSURANCE, | |
| Defendants. | |

Defendant Nationwide Mutual Insurance Company ("Nationwide"), also erroneously sued as Allied Insurance, moves for summary judgment on grounds that Plaintiff's claims are barred by the theft and entrustment provisions in the Commercial Insurance Policy issued to Plaintiff Bita Trading, Inc. ("Bita"). Bita opposes the Motion for Summary Judgment ("Motion"). For the reasons set forth below, the court grants summary judgment in favor of Nationwide and against Bita and instructs the Clerk of Court to close the file.

**BACKGROUND**

On May 24, 2013, Bita commenced this action in the California Superior Court, County of San Diego, by filing a form complaint alleging a single cause of action for breach of an insurance contract. On July 2, 2013 Nationwide removed the action to this court based upon diversity jurisdiction. (Ct. Dkt. 1).

In this insurance coverage action, Bita originally sought coverage under two

different insurance policies issued by Nationwide. This first policy, issued to Sorrento Mesa Hand Car Wash & Spa, Inc. ("Sorrento" and the "Sorrento Policy"), as set forth in this court's January 6, 2014 Order Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendant's Motion for Summary Judgment, provided coverage to Sorrento under the Property Form at issue, and to both Sorrento and Bita under the Liability Form.[1] (Ct. Dkt. 25). As Bita's claims arose solely under the Property Form, and not the Liability Form, the court granted partial summary judgment in favor of Nationwide and against Bita.

Bita's claims arise from the following generally described conduct. Bita owns real property located on Mira Mesa Boulevard in San Diego, California. Effective August 1, 2005, Bita entered into a 35-year Ground Lease with Sorrento for the construction and operation of a car wash and related facilities. The car wash was built in 2008 and operated through early 2012. Bita and Sorrento became involved in a dispute over the property. On May 25, 2012, the Superior Court of San Diego County terminated the lease, awarded monetary relief to Bita (in the amount of $812,873), and restored possession to Bita.[2] Bita asserts that Sorrento caused damage to the property in the amount of $750,000. (Ct. Dkt. 14-6; Sheena Decl. ¶7). Bita also represents that only the car wash portion of the business opened on June 1, 2013, and that the remaining portions of the operation, consisting of a convenience store, office and oil change facility, have not been fully repaired and have not been fully placed in service.

Bita's claims under the Bita Commercial Policy, Nationwide policy No. ACP CPP 7843309886, arise from damages to the property first discovered by Bita's property managers, Brian Crepeau and Michele Torres, on June 29, 2012. Upon unlocking and entering the building, the property managers discovered that fixtures and property had been stolen and parts of the building damaged. As described in the San Diego Police Department crime/incident report:

---

[1] The court incorporates that order as if fully set forth herein.

[2] On June 29, 2012, the Sheriff restored possession to Bita.

> Building fixtures had been completely ripped out or off of the building's exterior and interior. Electric wiring, metal piping, carpet, and ceiling covers were missing. Three large rooftop air-conditioning units were removed and stolen. Lighting fixtures, both inside and outside the building were also stolen. Thousands of dollars in damage was done to the building.

(Statement of Undisputed Material Fact ("UMF") Nos. 5, 7). There were no signs of forced entry, no windows or doors were broken, and the Deputy Sheriff had to gain access to the building by unlocking the door with a key provided by Sorrento. (UMF Nos. 8 - 10).

Michele Torres reported the crime to the San Diego Police Department and a report was prepared by Officer Bernard. Officer Bernard concluded that a burglary and concurrent vandalism had occurred. Nobody was ever prosecuted for the crime. (UMF 11, 12).

On October 22, 2012, Bita submitted a sworn statement for a claim in the amount of $731,498 for a loss due to theft and vandalism. (UMF 4). The amount of the claim included replacing the stolen items and repairing the damage to the building caused by the removal of the items (including the removal of some of the car washing equipment). On December 14, 2012, Nationwide denied the claim for that portion of the loss caused by theft and/or dishonest acts of persons to whom the property was entrusted. Nationwide did provide coverage for damage to the oil storage tanks on the property as it considered such damage caused by vandalism, not related to the theft, as covered within the Business Personal Property provision. (UMF 35).

By means of the present summary judgment motion, Nationwide argues that the evidentiary record demonstrates that Bita's claims are barred by the theft and entrustment provisions in the Commercial Policy. Bita opposes the motion.

## DISCUSSION

**Legal Standards**

<u>Motion for Summary Judgment Standards</u>

A motion for summary judgment shall be granted where "there is no genuine

issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Prison Legal News v. Lehman</u>, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." <u>Id.</u> (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992)).

<u>General Insurance Law Principles</u>

Ordinary rules of contract interpretation apply to insurance contracts. "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. If the contractual language is clear and explicit, it governs." <u>Bank of West v. Superior Court (Industrial Indemnity Co.)</u>, 2 Cal. 4th 1254 (1992). Where

exclusions are clear, plain, and conspicuous, they will be enforced. <u>Malcolm v. Farmers New World Life Ins. Co.</u>, 4 Cal.App.4th 296, 3045 (1992).

**The Motion for Summary Judgment**

The Motion pertains to three different policy provisions: the coverage provisions, the Theft Exclusion, and the Entrustment Exclusion.

<u>The Coverage Provision</u>

The Bita Commercial Policy defines the scope of covered property in the following manner.

> **A.  Coverage**
>
>    We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulted from any Covered Cause of Loss
>
>    **1   Covered Property**
>
>       Covered Property as used in this Coverage Part means the type of property described in this section **A 1**, and limited in **A 2**, Property Not Covered if a Limit of Insurance is shown in the Declarations for that type of property
>
>       **a**   **Building**, meaning the building or structure described in the Declarations including
>
>                            * * *
>
>       **b**   **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property - Separation of Coverage form
>
>                            * * *
>
>    **2   Property Not Covered**

Bita construes the Coverage Provision to read that "property is 'Not Covered' when a policy limit is shown." (Oppo. at p.1:12-13). As no limit for building coverage

is included, Bita concludes that there is unlimited coverage for damage to the building. Seen in context of the Coverage Provision and the Declarations page, the court concludes that Bita's reading of this provision is unreasonable. While not a model of clarity, the court, citing policy language, construes this provision to mean that property is covered "if a Limit of Insurance is shown in the Declarations for that type of property (i.e. the building structure or business personal property as described in provisions A (1)(a) and (b) and excluded by A(2))." Turning to the Declarations page, coverage is available for Extra Expense and Business Personal Property. ( NW 180). As building coverage is not identified in the Declarations Page, the court concludes that the Commercial Policy does not include such coverage.

In sum, Nationwide has shown that coverage is afforded for loss of Business Personal Property but not for the building.

<u>The Theft Exclusion</u>

The Bita Commercial Policy defines the Theft Exclusion in the following manner.

> **THEFT EXCLUSION**
>
> This endorsement modifies insurance provided under the following
>
> CAUSES OF LOSS SPECIAL FORM
>
> The following is added to the EXCLUSIONS section
>
> > **We will not pay for loss or damage caused by or resulting from theft**
> >
> > But we will pay for:
> >
> > 1. Loss or damage that occurs due to looting at the time and place of a civil riot or commotion; or
> >
> > 2. Building damage caused by the breaking in or exiting of burglars.

(UMF No. 34).

The word "theft" is

> used in insurance policies in [its] common and ordinary meaning. Theft involves the idea of a knowingly unlawful acquisition of property; that is, a felonious taking of it from one who has both the actual possession and

> the apparent right of possession. In construing the word 'theft' it should be given the usual meaning and understanding employed by persons in the ordinary walks of life, and should be construed as common thought and common speech now imagine and describe it. . . . It may well be that in a prosecution for a crime, the strict rules of criminal law would require the swindler to be charged with the particular crime that the facts constitute, but it cannot be said that the contract of insurance was drawn to fit the narrow limitations of criminal statutes.

Granger v. New Jersey Ins. Co., 108 Cal.App. 290, 294-95 (1930). Nationwide has the burden of proving the applicability of the Theft Exclusion. See Minkler v. Safeco Ins. Co. Of America, 49 Cal.4th 315, 322 (2010).

To establish that the property was taken as a result of a theft, Nationwide must first show that Sorrento did not have the right to the property taken by Sorrento. Upon termination of the lease, which occurred on May 25, 2012, when the Superior Court of San Diego County terminated the lease between Bita and Sorrento, Bita obtained title to all improvements including "carpets, draperies, partitions, machinery, equipment and fixtures." (Ct. Dkt. 15-1 §8). The only other issue is whether the property was subject to theft.

With respect to the theft of property, Nationwide comes forward with substantial evidence to show that the property was unlawfully removed from the premises. After Sorrento's lease was terminated by the Superior Court of San Diego on May 25, 2012, Bita's property managers, Brian Crepeau and Michelle Torres, gained entry to the property on June 29, 2012. The Deputy Sheriff, using the key obtained from Sorrento, entered the property with the property managers to discover that fixtures, electric wiring, metal piping, carpet, ceiling tiles, rooftop air conditioning units, and other equipment had been removed from the premises. There were no signs of forced entry to the property. Michele Torres reported the incident to the San Diego Police Department and Officer Bernard, after investigation, concluded that a burglary and

/ / /

/ / /

/ / /

concurrent vandalism had occurred.[3]

Additional evidence supporting the theft of the personal property consists of the insurance claim filed by Bita. Bita characterized the loss as "Vandalism - Theft.[4]" Moreover, at the deposition of Mr. Ahmad, he admitted that he removed and sold numerous components of the car wash. The items removed included arches, attachments, lights, six blowers, a water pump, a pressure washer, a computer, and other items. Officer Bernard testified, from his personal observations of the property, that he "was convinced that a burglary occurred based on the theft of several fixtures and the air conditioning units." (Nationwide Exh. 6, 12:24 - 13:6).[5] The evidence also shows that Ahmad contacted Leonard Whatley, the principal of Eco Construction, and informed him of a way to get some of the money back that Sorrento still owed Eco Construction for electrical work performed on the car wash. Whatley met Ahmad at the property and Ahmad advised Whatley that he had been evicted from the property and that he was going to remove all of the personal property from the site. Whatley observed Ahmad's employees removing some of the property. Ahmad also informed Whatley that he had rented a storage unit to store the removed property. Ahmad offered Whatley some of the items in exchange for monies owed to Eco Construction.

---

[3] Bita objects to a portion of the testimony of Michelle Torres. Bita provides no context or argument as to these objections. At her deposition, Torres testified that she suspected Sorrento of the damage and theft. (Nationwide Exh. 4, 19:13-33). Although she testified that she did not have any proof, she suspected Sorrento was the responsible party because, in part, the premises were locked and no windows or doors were broken. Bita objects to the testimony based upon lack of personal knowledge and hearsay. The court rejects these objections because, for the reasons elaborated at the time of the depositions, the testimony consists of her impressions and conclusions based upon the facts personally known by her. Further, the statements were made by Bita's agents and properly considered authorized admissions as well as statements against interest.

[4] Bita objects to the statements "vandalism - theft" under FRE 602. This objection is not well taken because Bita itself made these statements and they constitute party admissions. See Rule 801(d)(2).

[5] Bita objects to this evidence on grounds of "Rule 602; hearsay." Bita provides no context or argument as to these objections. The court rejects these arguments as Officer Bernard testifies as to his personal observations and based upon the statements by Bita's agents, Torres and Crepau.

1    Whatley declined the offer.[6]

2    Nationwide also identifies that the lease with the new tenant, Soapy Joe's, provided that the "Lessee acknowledges that the prior tenants removed certain improvements, equipment and fixtures from the Premises." (Exh. 11, section 2.2). The principal of Soapy Joe's informed the contractor performing repair work on the site that the prior tenant, Ahmad, had brought workers to remove everything from the property. (UMF 28).[7]

    Bita also argues that Nationwide must both establish the identity of the actor and that the actor had criminal intent to remove the property. Under California law, the theft exclusion applies even if the actor is unknown and criminal intent not shown. See Granger v. New Jersey Ins. Co., 108 Cal.App. 290, 294-95. In Certain Underwriters at Lloyds London v. Law, 570 F.3d 574 (5th Cir. 2009), thieves climbed onto the roof to steal copper tubing. In the process, the thieves destroyed portions of exterior panels that housed air-conditioning equipment and broke the equipment to steal the tubing. The value of the stolen property was $2,500 but the resulting damage was about $200,000. The court concluded that the entire loss was excluded under the theft exclusion because "damage done in furtherance of a theft or attempted theft is damage that falls within the theft exclusion of the instant policy." Under these authorities, the theft exclusion would bar the claim for both the stolen property and damages to the building.

---

[6] Bita objects to much of the Whatley testimony on grounds of Rule 602 and hearsay. With respect to the statements of Ahmad, as testified to by Whatley, Whatley, as a party to the conversations, possessed personal knowledge of the conversations. Further, many of the statements by Ahmad would be admissible as statements of his existing state of mind with respect to future actions he would undertake, as well as declarations against his interests, exposing him to civil and possible criminal liability.

[7] Bita objects to the lease it entered into with Soapy Joe's on the ground of lack of personal knowledge. The difficulty with this argument is that Bita's principal, Javanfar, authenticated the document and, moreover, signed and initiated the document. The court rejects the evidentiary objections to the lease between Bita and Soapy Joe's, although the lease has minimal probative value when compared to all the other evidence properly considered.

Bita argues that Ahmad only admitted to removing equipment and machinery components of the car wash and that Ahmad could have "mistakenly believed [the items] were trade fixtures he could remove under the lease." (Oppo. at p.7:4-5). Ahmad denied any theft of the property. One difficulty with this argument is that Bita, through the express terms of the ground lease between Bita and Sorrento, obtained title to all improvements including "carpets, draperies, partitions, machinery, equipment and fixtures." (Ct. Dkt. 15-1 §8). In other words, the removal of the components of the car wash, and the other identified equipment and personal property, was wrongful on the part of Ahmad and constitutes theft for purposes of the Theft Exclusion.

While the court concludes that the Theft Exclusion applies to bar Bita from recouping losses related to the theft of equipment, machinery, fixtures and personal property, and the concurrent damage to the building caused by the theft, incidents of vandalism present a distinct issue. Bita also argues that certain acts of vandalism are covered events. For example, someone poured sugar or another substance into the oil storage tanks. Nationwide paid for the damages to the tanks because it concluded that the damage was the result of vandalism, and not theft. The other act of vandalism identified by the parties is the damage caused by pouring thin-set cement into a drain or drains. The record does not establish whether Nationwide paid to repair this damage. In any event, acts of pure vandalism, that is, acts done solely to cause damage and do not involve damage caused by the removal of property, fall outside the Theft Exclusion.

In sum, the court grants summary judgment in favor of Nationwide and against Bita on the applicability of the Theft Exclusion. Damages to personal property or fixtures, and the resulting damage to the building related to the removal and theft of the personal property or fixtures, are not covered losses pursuant to the Theft Exclusion.

<u>The Entrustment Exclusion</u>

The Bita Commercial Policy defines the Entrustment Exclusion in the following manner:

**B.    Exclusions**

    2.    We will not pay for loss or damage caused by or resulting from any of the following.

        h.    Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives, or anyone to whom you entrust the property for any purpose.

(UMF 32).

Nationwide argues that the Entrustment Exclusion applies to bar Bita's claim. In Su v. New Century Ins. Services, Inc., 2013 WL 5775160 (C.D. Cal. 2013), the plaintiff purchased an "all-risk" insurance policy from New Century. The plaintiff leased the commercial property to the tenant. After a period of time, the tenant turned possession of the property back to plaintiff after it filed for bankruptcy. Water damage occurred to the property when an unidentified contractor removed climate control units from the roof because the tenant told the contractor that it could take the units as payment for work previously performed for the tenant. The plaintiff made a claim for the property damage and New Century argued that the claim was barred by the Entrustment Exclusion. On summary judgment, the district court concluded, in reliance upon California law, that the Entrustment Exclusion, similar to the one at issue in this case, "has been found to be unambiguous as a matter of law and specifically applicable to lessees." Id. at *4 (citing Atlas Assurance Co. v. McCombs Corp., 146 Cal.App.3d 135, 144 (1983). The court also noted that even if the damage was caused by vandalism and theft, "the entrustment exclusion applies to any such acts performed by anyone to whom the property is entrusted. Even if the loss occurs after the entrustment of the property has terminated, the exclusion still applies so long as there is a 'causal connection between the act of entrustment and the resulting loss.'" Id. (quoting Bainbridge, Inc. v. Calfarm Ins. Co., 2004 WL 2650892, at *6 (Cal.Ct.App.2004).

Bita contends that the Entrustment Exclusion does not apply because there is no admissible evidence that Sorrento damaged the property and that the State Court Judgment of May 25, 2012 terminated the lease and that Bita was simply seeking to regain possession. The difficulty with these arguments is that the damages to business personal property and fixtures were indisputably subject to vandalism and theft by Sorrento or its agents.[8] While the tenancy of Sorrento appears to have been terminated on May 25, 2012, there remains the "causal connection between the act of entrustment and the resulting loss." Id. That is, the damage to the property was caused by Bita's lessee. Furthermore, in its lease with Soapy Joe's, Bita explicitly required Soapy Joe's to acknowledge that the "prior tenant removed certain improvements, equipment and fixtures from the Premises." (Exh. 11, § 2.2).

Under these circumstances, the court concludes that the Entrustment Exclusion bars Bita's property damages claim. The evidentiary record shows that Eco Construction principal Leonard Whatley personally observed property being removed by Sorrento. Sorrento also informed Whatley that he could remove the air conditioning units in partial payment of monies owed to Eco Construction. Soapy Joe's contractor Riad Cody also testified that he was also informed by Bita's agent that the former tenant was responsible for the property damage. Furthermore, as set forth above, there is substantial evidence establishing that Sorrento and its agents were the parties responsible for the damages caused to the property. As such, Bita's claims are barred by the Entrustment Exclusion.

///
///
///
///
///
///

---

[8] The evidentiary challenges by Bita are discussed in the previous section.

1   In sum, the court grants summary judgment in favor of Nationwide and against Bita on its breach of contract claim. The Clerk of Court is instructed to enter judgment in favor of Nationwide and against Bita and to close the file.

**IT IS SO ORDERED.**

DATED: February 3, 2015

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties